5:11-cv-02664-TLW    Date Filed 10/25/12    Entry Number 65    Page 1 of 1

RECEIVED
USDC CLERK, FLORENCE, SC

2013 MAR 15  AM 10: 07

UNITED STATES DISTRICT COURT
FOR SOUTH CAROLINA

USDC RECEIVED
CLERK, FLORENCE, SC
2012 OCT 25  AM 10: 33

Bernard Bagley, 175851,                C/A No. 5:11-cv-02664-TLW

    Petitioner,

v.                                     NOTICE AND MOTION FOR RELIEF FROM
                                       JUDGMENT TO SET ASIDE JUDGMENT
Cecilia Reynolds, Warden               BASED ON MISCONDUCT OF RESPONDENTS
KER.CI (L2), et al.,                   pursuant to Rule 60(b)(3)(6), FRCiv.P

    Respondents.

TO: Tommy Evans, Jr., Legal Counsel for the Respondents.

    NOTICE IS HEREBY given that Petitioner, pro-se, will bring the annexed motion for relief from judgment or to set aside judgment in the above-entitled action before this Court in an evidentiary hearing at its earliest convenice.

    Petitioner, Bernard Bagley, pro-se, and pursuant to the provisions of Rule 60(b)(3)(6) of the Federal Rules of Civil Procedure does herewith move this court for relief from the judgment entered in the above-entitled matter on August 22, 2012, and to set the judgment aside on the basis of misconduct of the respondents which by due diligence could not have been presented in time to move for a new hearing under the provisions of Rule 59(b).

I declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct to the best of my personal knowledge and belief.

Executed in Kershaw, SC on October 17, 2012.

                                              s/ Bernard Bagley
                                              175851/HA162/KER.CI(L2)
                                              4848 Goldmine Hwy.
                                              Kershaw, SC 29067

**DENIED**

Terry L. Wooten    3/13/13
TERRY L. WOOTEN     DATE
U.S. DISTRICT JUDGE

(- No basis for relief under Rule 60(b)(3), 60(b)(2), or 60(b)(6))

UNITED STATES DISTRICT COURT
FOR SOUTH CAROLINA

USDC CLERK, RECEIVED
FLORENCE, SC
2012 OCT 25  AM 10: 33

Bernard Bagley, 175851,      C/A No. 5:11-cv-02664-TLW

      Petitioner,

v.      AFFIDAVIT IN SUPPORT OF MOTION
FOR RELIEF FROM JUDGMENT TO SET ASIDE
ASIDE JUDGMENT BASED ON MISCONDUCT
OF RESPONDENTS

Cecilia Reynolds, Warden
KER.CI(L2), et al.,

      Respondents.

Bernard Bagley, declare, certify, verify, and state under penalty of perjury that the following is true and correct to the best of his personal knowledge and belief, and being duly sworn, deposes and says:

1. That he is the Petitioner, Bernard Bagley, pro-se in the above-entitled action.

2. That he makes this affidavit in support of his motion to set aside the judgment entered on August 22, 2012, in the above-entitled action.

3. That subsequent to the filing on the Rule 59(b) Motion in the above-entitled matter, and subsequent to the expiration of the time limit for filing such motion, evidence of material issue came to the attention of the Petitioner which materially affects his substantive rights in the above-entitled matter and which he believes would have, had it been moot, materially affected the decision of the court to enter judgment on such matter. Such matters were not discovered, and by due diligence could not have been discovered, until October 10, 2012, and afterwards, and after the expiration of time for filing a Rule 59(b) Motion of the Federal Rules of Civil Procedure.

4. The Respondent, SCDPPPS Parole Board and Parole Examiner Sandra Ryan reprisal and retaliation reduce Bagley's chances for parole based on the entry of this case 5:11-cv-02664-TLW entries in his parole file and prison record, and as a result, created a significant risk of increased related injury and harm of punishment. In addition, reasonable expectation exist that the alleged violations of his rights will happen again, capable of repetition, and evades review. See: Sibron v. New York, 392 U.S. 40, 55 (1968). Attached and incorporated herein are Exhibits-AA, Disposition of Inmate Request, SCDC 19-83 Form, Explanation: Warrant # 90GS405849
                Richland County
                Murder - has been dismissal
                No change of Custody. (dated 9/26/12, signed by C. Sanders)
And, Exhibit-BB, Request to Staff Member SCDC Form 19-11, Disposition by Staff Member: There is no appeal or rehearing you will be heard next time you are eligible. (date 10/17/12, signature Sandra Ryan)

Wherefore, by reasons of the foregoing facts, Petitioner believes that his substantive rights in the above-entitled matter were materially affected by his inability to present the after discovered evidence to the court, and that had such evidence been presented and been available it would have affected the out-

1 of 2

C/A No. 5:11-cv-02664-TLW

come of the proceedings, and the Petitioner/Affiant, therefore prays that the court relieve him from the issue of judgment, so that Petitioner may be entitled to present such evidence, and further prays that the judgment previously entered be set aside, and such other relief as may be proper, and reopening judgment under Rule 60(b), such as misconduct of respondents with facts supporting Rule 15(a) to amend pursuant to Federal Rules of Civil Procedure.

I, Bernard Bagley, declare, certify, verify, and state under penalty of perjury that the foregoing is true and correct to the best of his personal knowledge and belief. I am competent to testify on matters contained in this affidavit if called to testify about them at a hearing.

Executed in Kershaw, SC on October 17, 2012.

s/ Bernard Bagley
175851/HA162/KER.CI(L2)
4848 Goldmine Hwy.
Kershaw, SC 29067

2 of 2.

CERTIFICATE OF SERVICE

I hereby certify that I, Bernard Bagley, on the 17th day of October, 2012, in Kershaw, SC, served a copy of the foregoing affidavit, Notice and Rule 60(b) Motion, Exhibits-AA and BB on all parties to this matter by depositing the same in the U.S. mail, postage prepaid, in the mail room of the undersigned's institution and addressed as follows:

Tommy Evans, Jr.
SCDPPPS Legal Counsel
P.O. Box 50666
Columbia, SC 29250

cc: Clerk's office
US Court of Appeals, 4th Cir.
Lewis F. Powell, Jr.
US Courthouse Annex
1100 E. Main St., Suite 501
Richmond, VA 23219

s/ Bernard Bagley
175851/HA162/KER.CI(L2)
4848 Goldmine Hwy.
Kershaw, SC 29067

**DISPOSITION OF INMATE REQUEST**

Exhibit-AA   C/A No. 5:11-cv-02664-TLW

HA 162A

Name: Bernard Bagley

SCDC #: 175851

LOCATION [Institution or Center]: Kershaw

YOUR REQUEST DATED _____ 19 ____ CONCERNING THE FOLLOWING

1. Good Time Restoration:
2. Job Assignment:
3. Work Release:
4. Employment Release:
5. Addition to Visiting List:

6. Transfer:
7. Employment Program:
8. Educational Release:
9. Custody Change:
10. Appeal of Adjustment Committee Action:

11. Earned Work Credit
12. Release Date:
13. Inmate Pay:
14. Protective Custody:

Other (specify): _____

has been   Approved/Granted ( ),   Disapproved/Denied ( ),

**EXPLANATION:**

Warrant # 9065405849
Richland County
Murder - has been dismissed
No change in Custody

Original: Inmate
cc: Inmate's Original Record
    Warden's Inmate Record
    File Copy

S/ _Sanders_
Title: Caseworker
Date: 9/26/12

SCDC 19-83 (Rev. Feb. 70)

Exhibit-BB

## SOUTH CAROLINA DEPARTMENT OF CORRECTIONS
## REQUEST TO STAFF MEMBER

C/A No. 5:11-cv-02664-TLW

| TO: NAME: Sandra Ryan, Parole Examiner, Ker.c.i. | TITLE: | DATE: 10.12. 2012 |
|---|---|---|
| INMATE'S NAME: Bernard Bagley | | SCDC #: 175851 |
| INSTITUTION: kershaw | | LIVING QUARTERS: HA162 |

Ms. Ryan, what is the board requiring from me or what must I do to be favorable consider for parole? I'm a born again christian, all glory be to God my Lord and Savior Jesus Christ. I have surrendered my life to the Lord, it does not belong to me anymore. I have taken all the institutional programs required of me, and completed the same successfully. I'm not involved in drugs, cell phones, immoral sexual behavior, no gambling, in fact, my disciplinary record is above average. Is it my demeanor or attitude when I appear before the panel? I have did all that i can do.

Nevertheless, I'm respectfully requesting for a rehearing based on the following information in which I acquired on the day of the hearing. I was informed by the caseworker on 10/11, that a detainer was showing in my record and the the board panel more likely had to see the same when I appeared before them. On 9/26/12, Ms. C. Sanders, Caseworker received information that my case warrant # 90GS405849; Richland County; murder - has been dismissal; no change in custody. If this is the case, the board members may have inadvertently overlooked this fact without post-phoning or deferring the hearing until the detainer is cleared, because how could the board conduct a hearing on the offense that has been dismissal.

In addition, I'm a God fearing man and I would prefer to be paroled because I'll remain accountable to myself, and walk in humility being obedient to the conditions of parole, and in God's Word. I'm a servant of the Most High. I don't have any word regarding the offense dismissal as of this date, but I'm asking if the board members will allow me a rehearing to explain why I should be paroled. I was a bit nervous because of my daughters emotional state. This time I'll be alone and better able to talk to the panel and answer any questions that they may have.

Thank you for considering this request for a rehearing.

DISPOSITION BY STAFF MEMBER:

There is no appeal or rehearing. You will be heard next time you are eligible.

DATE: 10/17/12

SIGNATURE: Sandra Ryan

I prayed four things that night, to establish a relationship with the resurrected, living Christ who has since transformed my life. First, I said, "Lord Jesus, thank You for dying on the cross for me." Second, I said, "I confess those things in my life that are not pleasing to You. I ask You to forgive and cleanse me." (The Bible says, "Though your sins are like scarlet, they shall be as white as snow" (ISAIAH 1:18).) Third, I said, "Right now, in the best way I know how, I open the door of my heart and life, and I trust You as my Savior and Lord. Thank You for coming into my life by faith."

After I prayed, nothing happened. There was no bolt of lightning. I even said to myself, "Oh, no! What'd I get sucked into now?" I felt I'd gone off the deep end. And some of my friends agreed. But I can tell you now that in six months to a year-and-a-half I found that I had not gone off the deep end.

Later, in a debate with the head of the history department of a midwestern university, I said that my life had been changed. My opponent interrupted me to say, "McDowell, are you trying to tell us that God changed your life in the twentieth century?"

After 45 minutes of my describing changes, he said, "Okay, that's enough."

One area I told him about was the mental peace I had finally found. Another was control of my temper. And old hatreds gradually turning to love.

You can laugh at Christianity; you can mock and ridicule it. But it changes lives.

Christianity is not something that can be forced on anyone. All I can do is tell what I've learned. Beyond that, it's your decision.

Christ was raised from the dead. He lives. He has the infinite capacity to enter your life, forgive you, and change you from the inside out.

*Excerpted from* The Resurrection Factor, *published by Here's Life Publishers, San Bernardino, California. Reprinted by permission of Campus Crusade for Christ.*



IN SEARCH of TRUTH

JOSH McDOWELL

**Donated by**
**Christian Library International**
**Box 97095 Raleigh NC 27624**
Sign up for the CLI Bible Study today
Tell us how this book helped you!


Good News Publishers
1300 Crescent Street
Wheaton, IL 60187

For holistic Christian literature, please write to us the address above or visit our website at www.goodnewspublishers.org. Bible references NIV

Few people were ever more sincere than I in trying—without success—to find meaning, truth and purpose to life.

But at the university I noticed a small group of people—eight students and two faculty members—with something different. They seemed to know what they believed and why. I wanted what I saw.

Two weeks later, while I was sitting with some of them at a table in the student union, the conversation began to center on God. That bothered me, because I thought it was not intellectual. And yet I was curious.

Leaning back in my chair, I said to one of the students, "Tell me, what has made you so different from others?"

She looked me in the eye with a little smile and said: "Jesus Christ!"

My response revealed my bias and my ignorance. "Oh, for heaven's sake," I said, "don't give me that garbage about religion!"

To which she replied: "I didn't say religion. I said Jesus Christ!"

My new friends challenged me to examine the claims of Christ. I thought most Christians were idiots. But these people were persistent. Finally, I accepted their challenge, out of pride, to refute them.

One of the crucial areas of my research to refute Christianity centered around His resurrection. More than 1,000 hours of studying this subject showed me that the resurrection of Jesus Christ was either one of the most wicked, heartless, vicious hoaxes ever foisted upon human minds, or it was the most fantastic fact of history.

Jesus of Nazareth, a Jewish prophet, claimed to be the Christ prophesied in the Jewish Scriptures. He was arrested, judged a political criminal, and crucified. Three days after His death and burial, some women went to His tomb and found the body gone. His disciples claimed that God had raised Him from the dead and that He had appeared to them and to many others at various times before ascending into heaven.

In my attempt to refute Christianity, I made some startling observations about the resurrection. The testimony of history; for example. I had no idea there was so much positive historical, literary and legal testimony supporting the factuality of Christ's resurrection. But the more I investigated, the more evidence I found. I came to see why the Apostle Paul had said, "If Christ has not been raised, our preaching is useless and so is your faith" (1 CORINTHIANS 15:14).

Jesus' foretelling of His resurrection was another of my startling observations. Prior to Jesus' death, He took His disciples aside and told them that He would be condemned to death and handed over to the Romans who would mock Him and spit on Him, flog Him and kill Him. And three days later He would rise from the dead (MARK 10:33-34).

The more I studied the historical-biblical Christian faith the more I realized it is a thinking person's faith. As Jesus said, "You will know the truth and the truth will set you free" (JOHN 8:32).

But alongside the scholarly evidence for the resurrection, there is circumstantial evidence—what happened to me.

Having set out to refute the resurrection and Christianity; and then having been compelled by the evidence to believe that Jesus Christ was indeed exactly who He claimed to be—and that He indeed rose from the dead, I faced a new problem. My mind was saying, "Christianity is true," but my will was saying, "Don't admit it!"

It came to the point where I'd go to bed at ten and wouldn't fall asleep until four in the morning. I knew I had to get Jesus off my mind or go out of my mind.

Finally on December 19, 1959, at 8:30 p.m., I became a Christian.